## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

               Plaintiff,

v.

(3) Patrick Joseph Kiley, also known as
Pat Kiley;

               Defendant.

Crim. No. 11-228 (MJD/JJK)

**REPORT AND RECOMMENDATION**

---

David J. MacLaughlin, Esq., and Tracy L. Perzel, Esq., Assistant United States Attorneys, counsel for Plaintiff.

David E. Zins, Esq., Attorney at Law, and H. Nasif Mahmoud, Esq., McKenzie, Wilkes & Mahmoud, counsel for Defendant.

---

This matter is before this Court on the Court's inquiry into whether Attorney H. Nasif Mahoud should be disqualified from representing Defendant Kiley based on certain purported conflicts of interest or his potential necessity as a trial witness.  (*See* Doc. No. 114 (granting the Government's Motion for Inquiry Re: Attorney as Witness and Conflict of Interest and Potential Disqualification at Doc. No. 80 ("Govt's Mot. for Inquiry")).)  This Court held a hearing on the matter on October 17, 2011.[1]  The matter has been referred to the undersigned for Report

---

[1]    The Star Tribune had filed a Motion to Intervene and for Public Access with regard to the Government's motion for inquiry.  (Doc. No. 91.)  On October 17, 2011, this Court granted the Star Tribune's motion for the limited purpose of asserting public access to court records and proceedings.  (Doc. No. 114.)

and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1.

For the reasons stated below, this Court recommends that Attorney H. Nasif

Mahoud should not be disqualified.

## BACKGROUND

On July 19, 2011, Defendant Kiley was indicted for Wire and Mail Fraud in

violation of  Title 18, United States Code, Sections 2, 1341, and 1343;

Conspiracy to Commit Mail and Wire Fraud in violation of Title 18, United States

Code, Section 371; and Money Laundering in violation of  Title 18, United States

Code, Sections 1957 and 2.  The next day, Defendant Kiley appeared before the

undersigned for his initial appearance.  At that hearing, Defendant stated that he

had retained Attorney David E. Zins.  (Doc. No. 21.)  On July 25, 2011, Attorney

Zins appeared on behalf of Defendant Kiley at his arraignment hearing, and

thereafter filed his Notice of Appearance on July 27, 2011.  (Doc. Nos. 33, 35.)

On August 1, 2011, Attorney Zins then filed a motion requesting that Attorney H.

Nasif Mahoud be admitted pro hac vice to participate in Defendant Kiley's

defense, which was granted.  (Doc. No. 39.)

On October 5, 2011, the Government filed a motion asking the Court to

conduct an inquiry regarding the following:

> I) whether current counsel to Mr. Kiley [i.e., Attorney Mahmoud] may
> be a necessary witness during the trial of this matter, thus
> disqualifying him from serving as trial counsel under Minnesota Rule
> of Professional Responsibility 3.7; and II) whether current counsel to
> Mr. Kiley [i.e., Attorney Mahmoud] has an actual or potential conflict
> of interest with one former client and one current client and, if the

circumstances warrant, to secure appropriate waivers of the conflict
or issue an order of disqualification.

(Doc. No. 80, Gov'ts Mot. for Inquiry 1.)  On October 14, 2011, Defendant Kiley's

counsel, Mr. Mahmoud, filed his response in opposition to the Government's

motion for inquiry.  (Doc. No. 111.)  Three days later, this Court held a hearing on

all the pretrial motions pertaining to Defendant Kiley, and granted the

Government's motion to inquire into whether Mr. Mahmoud should be

disqualified.  (Doc. No. 114.)

Regarding the issue of pretrial inquiry into potential conflicts flowing from

dual representation, the Eighth Circuit has provided the following guidance:

> Requiring a meaningful inquiry by the trial court serves both the
> defendant and the prosecution because it offers a greater likelihood
> that possible conflicts of interest can be identified and explored with
> the defendant so that other legal representation can be provided
> before prejudicial error has occurred, or, in the alternative, the record
> of such inquiry will show that, notwithstanding such potential conflict
> of interest, the defendant made a knowing and intelligent waiver of
> his right to separate counsel and, for reasons sufficient to the
> defendant, elected to go to trial with dual representation.

*United States v. Lawriw*, 568 F.2d 98, 104 (8th Cir. 1977).  The Eighth Circuit

also instructs that trial courts in this Circuit, at least when presented with a

situation of dual representation of defendants, should make an inquiry similar to

that required in *State v. Olson*, 258 N.W.2d 898 (Minn. 1977):

> The defendant must voluntarily and with full knowledge of the
> consequences decide on dual representation.  The court should
> address each defendant personally and advise him of the potential
> danger of dual representation.  The defendant should have an
> opportunity and be at liberty to question the trial court on the nature

and consequences of dual representation and the entire procedure
should be placed on the record for review.

*Lawriw*, 568 F.2d 98, 104–05 (quoting *Olson*, 258 N.W.2d at 907).  The Court

found the above instructive as to how best to proceed here in light of the potential

conflicts of interest raised.

At the pretrial motions hearing, the undersigned first instructed counsel

that the written submissions regarding the Government's concern over

Mr. Mahmoud being a necessary witness were sufficient for this Court to rule on

and took that matter under advisement.  This Court then allowed all counsel an

opportunity to be heard on whether there may be conflicts of interest with regard

to Mr. Mahmoud's representation of Defendant Kiley in light of Mr. Mahmoud's

current and former representation of Steve Nortier and Duke Thiejte,

respectively.  After attorney argument was entertained, Mr. Mahmoud

represented that both Defendant Kiley and his other current client, Steve Nortier,

would waive any conflicts of interest that arose out of his representation of

Defendant Kiley.  Based on Mr. Mahmoud's comments, the undersigned then

advised Defendant Kiley at length of the potential risks involved in having

Mr. Mahmoud represent him in this matter in light of his current and former

representation of clients who are likely to be adverse witnesses to his case here,

and allowed Defendant Kiley an opportunity to ask any questions.  This Court

also warned Defendant Kiley that by waiving the conflicts of interest now he

would be foreclosing any argument post-conviction (if he is convicted) that he

obtained ineffective assistance of counsel based on Mr. Mahmoud's

representation with respect to his cross-examination or trial strategy relating to

his current and former clients as trial witnesses for the Government.  Defendant

Kiley, after having been fully advised, placed a verbal waivers on the record as to

any conflicts of interest that exist in having Mr. Mahmoud represent him in light of

the relationships he has or had with Mr. Nortier and Mr. Thiejte.  At the

conclusion of the hearing, the undersigned instructed Mr. Mahmoud to also file

written waivers by Defendant Kiley and his current client Mr. Nortier, and took the

matter under advisement.  On October 24, 2011, Defendant Kiley filed his

Waivers of Potential Conflicts of Interest.  (Doc. No. 124.)  And on November 4,

2011, Steve Nortier filed his Waiver of Potential Conflict of Interest.  (Doc.

No. 130.)

## DISCUSSION

The Sixth Amendment of the United States Constitution guarantees each

defendant the "assistance of counsel for his defense."  "Where a constitutional

right to counsel exists, our Sixth Amendment cases hold that there is a

correlative right to representation that is free from conflicts of interest."  *Wood v.

Georgia*, 450 U.S. 261, 271 (1981).  Even though "[i]n general defendants are

free to employ counsel of their own choice and the courts are afforded little

leeway in interfering with that choice[,]" *United States v. Cox*, 580 F.2d 317, 321

(8th Cir. 1978), it is proper for this Court to inquire into potential conflicts of

interest that may require disqualification of counsel "before conflict results in

ineffective assistance of counsel." *United States v. Agosto*, 675 F.2d 965, 970

(8th Cir. 1982).  In this Circuit, however, courts "recognize that the Sixth

Amendment right to effective assistance of counsel may be waived if such a

waiver is knowing and intelligent."  *Lawriw*, 568 F.2d at 104; *see also United*

*States v. Edelmann*, 458 F.3d 791, 807 (8th Cir. 2006) (explaining that for a

waiver to be valid the defendant must be apprised of the conflict, cognizant of the

potential consequences of continuing with counsel, and aware of his right to

obtain other counsel); *Larry Buffalo Chief v. South Dakota*, 425 F.2d 271, 280

(8th Cir. 1970) ("[W]here a possible conflict of interest is pointed out to an

accused and the accused then makes an intelligent and intentional waiver, he

cannot later complain.").  Thus, when determining whether to disqualify counsel

based on conflict of interest, the court must balance "individual constitutional

protections, public policy and public interest in the administration of justice, and

basic concepts of fundamental fairness."  *Agosto*, 675 F.2d at 970 (quoting

*United States v. Garcia*, 517 F.2d 272, 273 (5th Cir. 1975)).

**I.      Is Mr. Mahmoud a necessary trial witness?**

The Government has asked the Court to inquire into whether Defendant

Kiley's counsel, Mr. Mahmoud, should be disqualified to serve as trial counsel

because he may be a necessary witness during Defendant Kiley's trial.  In that

regard, Minnesota Rule of Professional Responsibility 3.7 provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is
>     likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal
services rendered in the case; or

(3) disqualification of the lawyer would work substantial
hardship on the client.

The Minnesota Supreme Court further explains:

> To be disqualified, an attorney's testimony must be "necessary."
> Simply to assert that the attorney will be called as a witness, a too-
> frequent trial tactic, is not enough.  If the evidence sought to be
> elicited from the attorney-witness can be produced in some other
> effective way, it may be that the attorney is not necessary as a
> witness.  If the lawyer's testimony is merely cumulative, or quite
> peripheral, or already contained in a document admissible as an
> exhibit, ordinarily the lawyer is not a necessary witness and need not
> recuse as trial counsel.

*Minnesota v. McLaren*, 402 N.W.2d 535, 541 (Minn. 1987).

The Government asserts that Mr. Mahmoud may need to be disqualified

because he could testify as to facts related to the money laundering charge

asserted against his client – specifically that Mr. Mahmoud was present at

meetings with Trevor Cook in relation to a civil lawsuit that had been brought

against Cook and Defendant Kiley, and he was told by Cook that it was Cook

who initiated the money transfer at issue here, not Defendant Kiley.  In Count 17

of the Indictment, the Government charges Defendant Kiley with money

laundering based on a "[w]ire transfer of $100,000.00 from the Basel Group, LLC,

bank account at Associated Bank to an attorney" that occurred on July 13, 2009.

(Doc. No. 17, Indictment ¶ 38.)  It is undisputed that the attorney referenced in

Count 17 is Mr. Mahmoud, whom Defendant Kiley had retained in a related civil

7

action.  But the only information in the Indictment describing the Basel Group,

LLC states that it "was an unregistered shell company."  (*Id.* ¶ 9.)  Defendant

Kiley disputes that it was he who transferred the money to Mr. Mahmoud and

asserts that it was Cook who initiated the transfer, and therefore he argues that

he did not engage in money laundering.  (Doc. No. 111, Resp. to Gov't's Mot. for

Inquiry 7–8.)

Mr. Mahmoud explains that Cook had referred Defendant Kiley to certain

criminal and civil attorneys, and that Defendant Kiley chose Mr. Mahmoud as his

civil attorney over those referred by Cook.  (Defendant Kiley also rejected the

attorney that Cook recommended for this criminal case—Attorney Peter Wold—

and chose to retain Mr. Mahmoud for this matter instead.)  Mr. Mahmoud further

asserts that:

> Cook wired money or wrote the checks for all the attorneys.  All of
> them.  The governments investigative files show that Cook's civil
> attorney, John Thompson was paid $10,000 by check on 6-18-2009
> and then $500,000 by wire on 6-24-2009, and Thompson received
> another $100,000 by wire on 07-07-2009, that Cooks criminal
> attorney, Mauzy was paid $500,000 by wire on 6-24-2009, that
> Kiley's initial criminal attorney Wold was paid $110,00 [sic] and that
> Kiley's civil attorney (and now his present criminal defense counsel)
> was wired $100,000.  The government's investigative files show that
> these funds came from Associated Bank and that Cook made all the
> transfers.

(Doc. No. 111, Resp. to Gov't's Mot. for Inquiry 7–8.)  It appears that

Mr. Mahmoud is saying that the $100,000 wire transfer from the Basel Group,

LLC, bank account at Associated Bank was for the payment of legal fees to

represent Defendant Kiley in civil litigation arising out of the Cook matters, that

the wire transfer was initiated by Cook, and that the transaction was a part of the

joint defense effort of putting together a civil and criminal team of lawyers to work

on Cook related matters including the representation of persons, like Defendant

Kiley, who were involved in those matters.  Most important for this motion,

however, is that Mr. Mahmoud represents that there were other attorneys present

at the meetings with Cook and Mr. Mahmoud who can testify as to what

happened at those meetings, including about the fact that Cook had stated it was

he who initiated the wire transfer.

Taking Mr. Mahmoud at his word, it appears that he has a trial strategy in

place to rebut Count 17 of the Indictment without having to rely on his own

testimony.  Because he claims there are documents that can show, and other

witnesses that can testify, that Defendant Kiley did not initiate the money transfer

at issue, this Court cannot conclude that Mr. Mahmoud is a "necessary" trial

witness.  Further, this Court is mindful that in light of the Sixth Amendment,

Defendant Kiley is "free to employ counsel of [his] own choice."  *Cox*, 580 F.2d at

321.  Therefore, after balancing Defendant Kiley's "individual constitutional

protections, public policy and public interest in the administration of justice, and

basic concepts of fundamental fairness,"  *Agosto*, 675 F.2d at 970, and because

this Court finds, on the basis of the record that is now before the Court, that

Mr. Mahmoud is not a "necessary" trial witness, this Court concludes that the

Court need not disqualify Mr. Mahmoud from being Defendant Kiley's trial

counsel on this basis.

**II.     Does Mr. Mahmoud's relationship with his former client create a conflict of interest requiring disqualification?**

According to the Government, in 2005, Duke Thiejte made investments with Defendant Kiley.  It is undisputed that also in 2005, Defendant Kiley referred Mr. Thiejte to Mr. Mahmoud and Mr. Mahmoud represented Mr. Thiejte at that time for the purposes of creating a foreign trust, legal work unrelated to Defendant Kiley.  Through the course of this representation, Mr. Thiejte made certain disclosures to Mr. Mahmoud relating to his financial and employment situation.  The attorney-client relationship between Mr. Mahmoud and Mr. Thiejte ceased after a fee dispute.

Later, when Mr. Thiejte was not able to get his money back from his investments with Defendant Kiley, Mr. Thiejte sued Defendant Kiley because, he claimed, Defendant Kiley had misrepresented to him that his money would be held inviolate in a segregated account.  The Government asserts that it intends to use Mr. Thiejte as a key witness against Defendant Kiley at trial based on the losses he incurred as an early investor when REFCO, one of the financial intermediaries in this case, went into bankruptcy.

Whether Mr. Mahmoud should be allowed to continue representing Defendant Kiley, in light of his prior attorney-client relationship with Mr. Thiejte— a witness that the Government intends to use against Defendant Kiley—involves inquiring into the appropriateness of "successive representation," which is "where an attorney representing a defendant has previously represented codefendants

or trial witnesses."  *See Agosto*, 675 F.2d at 970.  As explained by the court in

*Agosto,* in such a situation a major source of conflict is the "attorney's receipt of

privileged information from a witness or codefendant":

> In the successive representation situation, privileged information
> obtained from the former client might be relevant to cross-
> examination, thus affecting advocacy in one of two ways:
>
>> (a) the attorney may be tempted to use that confidential
>>     information to impeach the former client; or
>>
>> (b) counsel may fail to conduct a rigorous cross-examination
>>     for fear of misusing his confidential information.
>
> The second major possibility of conflict in the successive
> representation situation is that the attorney's pecuniary interest in
> possible future business may cause him to make trial decisions with
> a view toward avoiding prejudice to the client he formerly
> represented.

*Id*. at 971 (internal citations omitted); *see also United States v. Flynn*, 87 F.3d

996, 1001 (8th Cir. 1996) ("An example [of a conflict of interest in a 'successive

representation' case] may be where counsel's cross-examination of a former

client is impeded for fear of misusing confidential information.").  Further,

Minnesota Rule of Professional Responsibility 1.6 prohibits an attorney from

disclosing "information relating to the representation of a client."

The court in *Agosto* instructs that when evaluating conflicts of interest in

successive representation cases pretrial, "the first inquiry is whether there is

good cause to believe that a conflict of interest is likely to arise."  *Agosto*, 675

F.2d at 971.  Further, disqualification based on a conflict of interest created

through successive representation is only necessary if it is shown that the

successive representation creates a "serious potential" for an adverse effect on the case, "not merely an abstract or theoretical one." *Flynn*, 87 F.3d at 1001. In conducting this inquiry, "substantial weight is given to defense counsel's representations." *Id.*

During the course of Mr. Mahmoud's representation of Mr. Thiejte, he made certain communications to Mr. Mahmoud relating to his financial and employment situation that presumably would come within the attorney-client privilege. Because Mr. Thiejte may be called by the Government to testify about his investments relating to the ponzi scheme at issue, Mr. Thiejte's financial and employment situation may become relevant. Mr. Mahmoud does not dispute this. Because there is a risk that attorney-client privileged information could be implicated in the course of Mr. Mahmoud's cross-examination of Mr. Thiejte on Defendant Kiley's behalf (i.e., Mr. Mahmoud may be tempted to use confidential information he learned from Mr. Thiejte about, for example, his financial and employment situation to impeach Mr. Thiejte or fail to conduct a rigorous cross-examination for fear of misusing his confidential information), this Court concludes that a conflict of interest may likely arise based on the successive representation of Mr. Theijte and Defendant Kiley. This Court's finding a conflict of interest, however, does not end the inquiry.

If a court determines that a conflict of interest exists, waivers may be sought. *Holloway v. Arkansas*, 435 U.S. 475, 483 n.5 (1978); *see also United States v. Johnson*, 131 F. Supp. 2d 1088, 1100–01 (N.D. Iowa 2001) (stating that

case law "strongly suggests that an 'acceptable waiver' by the defendant potentially threatened by a conflict of interest from 'successive representation' . . . would itself constitute a sufficient remedy of any potential conflict").  The court should conduct an inquiry to assess the severity of the conflict, to determine whether the conflict is waiveable, and to obtain intelligent and voluntary waivers if warranted by the circumstances.  *See United States v. Brekke*, 152 F.3d 1042, 1044–46 (8th Cir. 1998).  If the conflict either is so severe that no waiver could be intelligent and voluntary, or if waivers are not forthcoming, the Court may have no alternative but to order disqualification. *Agosto*, 675 F.2d at 973–74; *see also Johnson*, 131 F. Supp. 2d at 1102 (stating that if "the conflict is so severe that no rational defendant would waive it, the court must disqualify the attorney") (quotations omitted).

Here, Mr. Mahmoud represents that he only "gave [Mr. Theijte] advice and consultation on an international business transaction and nothing else"; "[t]he advice and consultation was given to [Mr. Theijte] on a one time basis regarding an international business transaction."  (Doc. No. 111, Resp. to Gov't's Mot. for Inquiry 6–7.)  Also, his relationship with Mr. Theijte started and ended years before Mr. Kiley became Mr. Mahmoud's client.  And at the time when Mr. Theijte was involved in investing with Mr. Cook and Defendant Kiley, he was no longer a client of Mr. Mahmoud's.  Based on these representations by Mr. Mahmoud, this Court concludes that the conflict is not so severe that a waiver could not be sought.

Any waiver of a conflict of interest must be "knowing and intelligent."  *See*

*Agosto*, 675 F.2d at 969–70.  "Whether a waiver is knowing and voluntary (or

intelligent) is based on an examination of the facts, including such things as

whether 'the district court advised [the defendant] of the potential conflict and the

dangers of proceeding with [chosen] counsel; and that [the defendant] knowingly,

voluntarily, and intelligently waived his right to have an attorney unburdened by a

potential conflict represent him [in the proceedings].'"  *Johnson*, 131 F. Supp. 2d

at 1101 (citing *United States v. Ayd*, 25 F.3d 624, 627 (8th Cir. 1994), and *United

States v. Reed*, 179 F.3d 622, 626 (8th Cir. 1999)).  Here, this Court advised

Defendant Kiley on the record of his right to separate and independent counsel

free from any conflict of interest, and explained to Defendant Kiley the ways in

which his defense counsel might proceed differently at trial if he had counsel with

no conflict.  On the record, Defendant Kiley stated his unequivocal waiver of any

conflict of interest that Mr. Mahmoud may have, and stated that he wanted

Mr. Mahmoud to continue as his attorney.  This Court is satisfied that Defendant

Kiley understands the potential for a conflict of interest and the impact this

conflict might have on Mr. Mahmoud's representation of him, and concludes that

Defendant Kiley did knowingly and intelligently waive his Sixth Amendment right

to counsel unimpaired by conflict of interest.  Therefore, it is not necessary to

disqualify Mr. Mahmoud from representing Defendant Kiley based on

Mr. Mahmoud's former representation of Mr. Theijte.  This Court notes that

Mr. Mahmoud could assign any cross-examination of Mr. Theijte to his co-

counsel Mr. David E. Zins, in order to avoid any actual conflict of interest that

may arise that would cause adverse consequences to Defendant Kiley.[2]  *See*

*Agosto*, 675 F.2d 974 (stating that the court saw "no reason to reject [the

defendant's] proposal to employ a backup counsel as a satisfactory resolution of

the conflict"); *see also United States v. Jeffers*, 520 F.2d 1256, 1266 (7th Cir.

1975) (stating that there was no reason why the attorney "could not have made

an offer to have some other lawyer retained for this limited purpose, or why he

could not make an appropriate record demonstrating that further cross-

examination would have been beneficial to his clients").  In addition,

Mr. Mahmoud is reminded that he is prohibited from disclosing to Mr. Zins, or

anyone else, any confidential matters flowing from his prior representation of

Mr. Theijte.

---

[2]     Mr. Mahmoud represents that Mr. Kiley's local counsel, Mr. Zins, "has never handled a major felony case involving securities fraud or conspiracy to commit money laundering or mail fraud nor any other kind of complex litigation involving securities law," and that his "background and experience with criminal defense work has been limited and confined primarily to the defense of misdemeanor and low level felony cases." (Doc. No. 111, Resp. to Gov't's Mot. for Inquiry 3.)  Mr. Mahmoud also asserts that only he—Mr. Mahmoud—has the breadth of knowledge pertaining to the background, facts, and documents in this case necessary to properly defend Defendant Kiley, and that it would be very expensive and cause huge delays for even an experienced lawyer to get up to speed on this case.  Although this may be true at the moment, the trial date has recently been reset for April 19, 2012, which leaves plenty of time for Mr. Zins to prepare for conducting one or two cross-examinations in this case.  And by having Mr. Zins conduct these cross-examinations, it may resolve any potential conflict that may arise.

**III.    Does Mr. Mahmoud's relationship with his current client create a conflict of interest requiring disqualification?**

Minnesota Rule of Professional Conduct 1.7 provides, in relevant part, as follows:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

    (1) the representation of one client will be directly adverse to another client; or

    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a personal interest of the lawyer.

It is undisputed that Mr. Mahmoud currently represents Steve Nortier, although it is somewhat unclear as to in what capacity.  Mr. Nortier, according to the Government, has information adverse to Defendant Kiley, based on his prior relationship with Defendant Kiley when he was hired to secure radio airtime for Defendant Kiley's radio program, Follow the Money.  The Government asserts that during that relationship, Mr. Nortier's business created the website www.patkiley.com, which contained certain false claims about Defendant Kiley's qualifications as an investment advisor and about the safe and secure nature of the currency program that was being promoted.  Defendant Kiley allegedly used this website to attract investors to the investment scheme alleged in the Indictment.  According to the Government, Mr. Nortier has stated both informally and under oath that Defendant Kiley was the source of the information included

16

in the website, and it intends to use Mr. Nortier as a trial witness.  Defendant

Kiley disputes the above asserted facts, arguing that the evidence does not show

that Mr. Nortier "or his staff people ever built the website or fed information to it."[3]

(Doc. No. 111, Resp. to Gov't's Mot. for Inquiry 5.)  Nevertheless, Mr. Mahmoud

represented that Mr. Nortier, if he was asked, would "sign a waiver indicating that

he has no objection to present counsel representing Kiley during this trial or

cross-examining him."  (Doc. No. 111, Resp. to Gov't's Mot. for Inquiry 5.)

Similar to the situation involving successive representation, a "major

course of conflicts" in a multiple representation case "is the attorney's receipt of

privileged information from a witness or codefendant."  *Agosto*, 675 F.2d at 971.

Based on the nature of the testimony that will be sought from Mr. Nortier, this

Court concludes that there is good cause to believe that a conflict of interest is

likely to arise.  *See id.* ("When an attorney attempts to represent his client free of

compromising loyalties, and at the same time preserve the confidences

communicated by a present or former client during representation in the same or

a substantially related matter, a conflict arises.").

---

[3]     Mr. Mahmoud also claims that the Government intentionally chose the wrong witness, Mr. Nortier, in order to create this conflict-of-interest argument so that Mr. Mahmoud would be disqualified.  (*Id.*)  This Court notes that there is no evidence in the record to support this allegation.  And even if Mr. Mahmoud's theory is true, and it was another person who built the website, there is nothing precluding the Government from utilizing Mr. Nortier as a fact witness to testify as to what he knows.

As explained above, representation of two clients "clouded by conflict of interests may violate the Sixth Amendment's right to effective assistance of counsel." *Brekke*, 152 F.3d at 1045. But a defendant "may waive his right to the assistance of an attorney unhindered by a conflict of interests." *Holloway*, 435 U.S. at 483 n.5. "The waiver must be knowing, voluntary, and intelligent." *Brekke*, 152 F.3d at 1045. Although the Court here is not faced with joint representation of two defendants, this Court still conducted an inquiry into Defendant's representation and advised him of his right to separate representation. *See* Fed. R. Crim. P. 44(c) ("Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel."); *see also Brekke*, 152 F.3d at 1045 ("The court should address each defendant personally and advise him of the potential danger of dual representation. The defendant should have an opportunity and be at liberty to question the trial court on the nature and consequences of dual representation and the entire procedure should be placed on the record for review." (quoting *Lawriw*, 568 F.2d at 104)).

Specifically, at the hearing in this matter, the undersigned separately advised Defendant Kiley on the record of his right to separate and independent counsel free from any conflict of interest that may arise as to Mr. Mahmoud's current representation of Mr. Nortier, and explained to him the difficulties that his counsel may have in representing both him and Mr. Nortier, especially when Mr. Mahmoud would be called upon to cross-examine Mr. Nortier in Defendant

Kiley's defense.  On the record, Defendant Kiley again stated his unequivocal

waiver of any conflict of interest that Mr. Mahmoud may have, and stated that he

wanted Mr. Mahmoud to continue as his attorney even if he currently represented

Mr. Nortier as well.  After the hearing, both Defendant Kiley and Mr. Nortier filed

written waivers with the Court.  (Doc. Nos. 124, 130.)  This Court is satisfied that

Defendant Kiley understands the potential for a conflict of interest that arises out

of Mr. Mahoud's dual representation and the impact this conflict might have on

Mr. Mahmoud's representation of him, and concludes that Defendant Kiley did

knowingly and intelligently waive his Sixth Amendment right to counsel

unimpaired by conflict of interest.  Therefore, this Court concludes that it is not

necessary to disqualify Mr. Mahmoud from representing Defendant Kiley based

on Mr. Mahmoud's current representation of Mr. Nortier.  But again, this Court

notes that Mr. Mahmoud could assign Mr. Nortier's cross-examination to his co-

counsel Mr. Zins so that any actual conflict of interest that might arise that would

adversely affect Defendant Kiley is avoided.  *See Agosto*, 675 F.2d 974; *Jeffers*,

520 F.2d at 1266.  And, as with Mr. Theijte, Mr. Mahmoud is reminded that he is

prohibited from disclosing to Mr. Zins, or anyone else, any confidential matters

flowing from his representation of Mr. Nortier.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1.      Attorney H. Nasif Mahoud should not be disqualified at this time.


Date: November 10, 2011

> *s/Jeffrey J. Keyes*
> JEFFREY J. KEYES
> United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 24, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.